IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

```
VENUS RAWLS, Personally and on   :
Behalf of all Others Similarly   :
Situated, et al.                 :
                                 :
v.                               :   Civil No. WMN-05-2602
                                 :
AUGUSTINE HOME HEALTH            :
CARE, INC. et al.                :
                                 :
```

**MEMORANDUM**

Before the Court are Plaintiffs' Motion to Facilitate Identification and Notification of Similarly Situated Employees (Paper No. 8), Defendants' Motion to Quash Plaintiffs' Subpeona Duces Tecum to ADP, Inc. (Paper No. 22), and Defendants' Motion to Dismiss Count III of the First Amended Complaint (Paper No. 12).  All motions are ripe for decision.  Upon a review of the pleadings and applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that all motions will be granted.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

On September 19, 2005, Plaintiff Venus Rawls filed a complaint on behalf of herself and other similarly situated employees against Augustine Home Health Care, Inc. (Augustine) and its President, Chief Executive Officer, and owner, David Mainguy.  On October 19, 2005, Rawls filed an amended complaint adding Tamara Jeter, Gloria Gladden, and Rodney Johnson as Plaintiffs in the action.  According to Defendants, Augustine "employs 'companions' for employment with the aged or infirm."[1]  Answer ¶ 5.  Plaintiffs were employed as Certified

---

[1] Plaintiffs allege that Augustine provides staffing for health care facilities and employs health care personnel in

Nurse Assistants (CNAs) by Augustine at its Towson, Maryland facility. Mem. 2. Augustine has five locations throughout Maryland and Texas. Plaintiffs allege that Augustine did not record their overtime hours properly and/or failed to pay them at the overtime rate when they worked in excess of forty hours in a work week. Am. Compl. ¶ 6. As a result, Plaintiffs claim that Defendants violated: the Federal Fair Labor Standards Act of 1938 (FLSA), as amended, 29 U.S.C. §§ 201 et seq.; the Maryland Wage & Hour Law (MW&HL), Md. Code Ann., Lab. and Empl. §§ 3-301 et seq.; and the Maryland Wage Payment & Collection Law (MWP&CL), Md. Code Ann., Lab. and Empl. §§ 3-501 et seq.

**II. DISCUSSION**

    **A.  Motion for Court Facilitated Notice to Similarly Situtated Employees**

Plaintiffs' motion for court facilitated notice was filed pursuant to 29 U.S.C. § 216(b), which establishes an "opt-in" scheme whereby potential plaintiffs must affirmatively notify the court of their intention to become a party to a FLSA suit. The section provides that, "an action . . . maybe maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." "A collective action affords plaintiffs 'the advantage of lower individual costs to vindicate rights by the pooling of resources.' Further, 'the judicial system benefits by efficient resolution in one proceeding of common issues of

---

Maryland and Texas. Mem. 2. Defendants reject this assertion and state that "Augustine does not provide staffing for health care facilities." Answer ¶ 5.

law and fact.'" Morisky v. Pub. Serv. Elec. & Gas Co., 111 F. Supp. 2d 493, 496 (D. N.J. 2000) (quoting Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989)) (internal citation omitted). The benefits of a collective action "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate. Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties." Hoffman-La Roche, Inc., 493 U.S. at 170.

Under § 216(b), "district courts have discretion, in appropriate cases, to . . . facilitate notice to potential plaintiffs." Id. at 169. Whether the plaintiffs have demonstrated that potential class members are "similarly situated" determines whether this is an appropriate case for the Court to exercise its discretion. Camper v. Home Quality Mgmt. Inc., 200 F.R.D. 516, 519 (D. Md. 2000). Before court assistance is granted, a plaintiff is required "to make a preliminary factual showing that a similarly situated group of potential plaintiffs exists." Id. (quoting D'Anna v. M/A-Com, Inc., 903 F. Supp. 889, 893-94 (D. Md. 1995)).

Plaintiffs support their assertion that potential class members are similarly situated with two affidavits in which it is asserted that when Plaintiffs worked more than forty hours a week they were paid at their regular hourly rates, at least ten other CNAs working at the Towson facility worked in excess of forty hours a week and were compensated at their regular hourly rates, and according to conversations with Management at the Towson facility CNAs were not

3

entitled to overtime pay. Mem. Exs. 2 & 3. In addition, Plaintiffs present a letter from Augustine to "All Augustine Home Health Employees" which states that "[d]ue to an exception for all domestic employees (i.e. companions, home health assistants, nannies, etc.) if you work over forty hours a week, you will be paid your regular pay rate. There is not time and a half for overtime." Reply Ex. 2.

Defendants argue that the only evidence of similarly situated class members presented by Plaintiffs amounts to conclusory statements that others had been paid at their regular rates for overtime work, which fails to meet the necessary factual showing. Opp'n 5-9. Defendants assert that the facts of the present case are similar to those of D'Anna v. M/A-Com, Inc., in which the Court found that the plaintiff's allegations of class-wide age discrimination were both broad and vague. 903 F. Supp. at 894. In D'Anna, however, the plaintiff merely alleged that he was terminated because of his age, other employees over the age of forty were also terminated, and that his employer intended to discriminate on the basis of age. Id. at 894. The plaintiff only supported these allegations with the admission of his employer that four employees over the age of forty were terminated and a list of seven older employees who were terminated. Id.

Defendants also argue that this case is similar to H & R Block Ltd. v. Houdsen, in which the court found that the plaintiff failed to substantially allege that the putative class members were together the victims of a single decision or plan to discriminate. 186 F.R.D. at 400. The court pointed to three factors that other courts had relied upon in determining whether substantial allegations were made: whether

4

potential plaintiffs were identified, whether affidavits of potential plaintiffs were submitted, and whether evidence of a widespread discriminatory plan was submitted.  Id.  Having found that the plaintiff failed to meet any of these factors by only submitting two affidavits of then current plaintiffs stating that they believed other workers were discriminated against in similar ways the Houdsen court held that the unsupported assertions failed to show that similarly situated plaintiffs existed.  Id.

In the present case, however, Plaintiffs have provided evidence consistent with the requirements of Houdsen.  First, the Plaintiffs identified by affidavit that at least ten other CNAs at the Towson facility worked more than forty hours a week and were compensated at their regular hourly rate.  Mem. Exs. 2 & 3.  Second, Plaintiffs have submitted the affidavit of Shante Cook, a former employee of Augustine, who was compensated at her regular hourly rate for overtime she worked, and is not a party to this suit.  Mem. Ex. 3.  Finally, Plaintiffs submitted the affidavits and letter from Augustine as evidence in support of their allegations of a company decision to not pay overtime to CNAs.  Mem. Exs. 2 & 3, Reply Ex. 1.  This Court finds that, in contrast to the facts of both D'Anna and Housden, Plaintiffs allege that a company policy was in place to pay CNAs at their regular rates for overtime work and sufficiently support these assertions with the affidavits and the company letter.  The specific facts presented in support of Plaintiffs' allegations that Augustine refused to provide CNAs with overtime pay for overtime worked are similar to the facts of Camper v. Home Quality Mgmt. Inc., in which testimony that employees performed unpaid work combined with testimony that

5

supervisors were aware of the unpaid work were enough to preliminarily establish the existence of a company policy.  200 F.R.D. at 520. Thus, Plaintiffs have alleged enough facts to support the issuance of notice to other CNAs employed by Augustine.

Defendants argue that notice is inappropriate because of the individualized and fact-specific inquiry required in this case.  Opp'n 11-14.  According to Defendants, an important issue in the case will be whether the Plaintiffs are exempt from FLSA coverage.  Id. at 11. Defendants reason that because the overtime requirements of FLSA do not apply to those who provide "companionship services," the essential determination will be whether the individual plaintiffs provide companionship services, which is based on what an employee does on a day-to-day basis.  Id.; see Ale v. Tennessee Valley Authority, 269 F.3d 680, 688-89 (6th Cir. 2001) (finding that the court must focus on the employees' day-to-day activities in order to determine whether these employees are subject to exemptions under FLSA).  Defendants argue that collective treatment is improper because the Court will have to conduct a factual analysis for each plaintiff.  Opp'n 13.

The Court finds, however, that in this case the possibility of an individualized fact specific inquiry does not preclude notice.  First, according to Plaintiffs CNAs perform similar duties and Defendants do not contend otherwise.  Reply 5; see Morisky, 111 F. Supp. at 498 (refusing to recognize the opt in plaintiffs as similarly situated where the defendant pointed out specific dissimilarities between the job duties of the named plaintiffs and the opt-in plaintiffs). Second, many of the cases cited by Defendants held the plaintiffs to a

6

higher burden than is applicable in the present case.[2]  See Opp'n 11-13.  In those cases the court was deciding whether the case should proceed as a collective action after discovery was completed (see, e.g., Morisky, 111 F. Supp. at 498), but the present case is in the preliminary stage at which Plaintiffs' burden is minimal.[3]  See Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 91, 95 (S.D.N.Y. 2003) (stating that a plaintiff's burden to demonstrate that potential plaintiffs are similarly situated to him or her is minimal when the determination is merely a preliminary one).  The Court at

---

[2] Most courts engage in a two-step inquiry in order to determine whether the "appropriate circumstances" exist for the court to exercise its discretion and allow the action to proceed as a collective action.  "[F]irst, the court should allow plaintiff to proceed on a provisional basis upon a minimal evidentiary showing that plaintiff can meet the substantive requirements of 29 U.S.C. § 216(b); and, second the court should render a final decision regarding the propriety of proceeding as a collective action with the benefit of all evidence gathered in discovery."  Mike v. Safeco Insurance Company, 274 F. Supp. 2d 216, 219 (D. Ct. 2003).

[3] One case relied upon by Defendants, Mike v. Safeco Insurance Company, was in the first stage of the analysis, but based on its facts it is distinguishable from the present case.  274 F. Supp. 2d 216 (D. Ct. 2003).  The Mike court found that the plaintiff could not meet the modest factual showing that potential class members were similarly situated when he failed to provide evidence of a common thread binding his proposed class of employees. Id. at 220-21.  The plaintiff referred to himself under two titles, neither of which the defendant claimed existed, and he expressly disavowed the description of his job position offered by the defendant stating that on a day-to-day basis he performed functions other than those set forth in the description.  Id. at 218 & n.2, 220-21.  The plaintiff, nonetheless, argued that other employees were similarly situated and requested that notice be sent to all former and current employees of the defendant.  Id. at 218 & n.2, 220.  In the present case, however, Plaintiffs maintain that they were CNAs preforming similar job tasks and have requested that notice be sent to other CNAs.  Reply 5.

7

this time is only determining that notice may be sent to those who at this preliminary stage may be potential plaintiffs, the Court is not determining that those being notified are similarly situated.[4]  Third, deciding whether this case requires an individual analysis of employees' job tasks goes to the merits of the case, and the Court need not evaluate the merits of the claim to determine whether the appropriate circumstances exist for court facilitated notice to be appropriate.  Young v. Cooper Cameron Corp., 229 F.R.D. 50, 55 (S.D.N.Y. 2005) (refusing to address the defendant's argument that plaintiff was an exempted professional not entitled to overtime under FLSA after finding that notice was appropriate where all Product Design Specialists were similarly situated).

Defendants argue that should the Court find that notice is appropriate, notice should be limited to employees at the Towson facility.  Defendants contend that Plaintiffs have failed to demonstrate that Defendants had a company-wide policy that could link together Augustine employees across offices.  Opp'n 3.  Plaintiffs reason that because Defendants, as part of their defense, argue that Plaintiffs are exempt from the overtime requirements[5] (Answer ¶ 27), it would be "surprising" if CNAs at other facilities were paid at the overtime rate for overtime worked.  Reply 7-8.  The Court agrees and

---

[4] "Should discovery reveal that plaintiffs in fact are not similarly situated . . . [the court] may later decertify the class, or divide the class into subgroups if appropriate." Realite v. Ark Restaurants Corp., 7 F. Supp. 2d 303, 308 (S.D.N.Y. 1998).

[5] Defendants' assert that Plaintiffs' are exempt under § 213(a)(15) of FLSA as providers of "companionship" services.

8

finds that it is implicit in Defendants' exemption argument that CNAs at all Augustine facilities are not paid at an overtime rate for overtime worked and, as such, notice should be issued to CNAs at all Augustine facilities, and not solely the Towson facility.

Defendants argue that should the Court grant Plaintiffs' request for court facilitated notice, the content of the notice submitted by Plaintiffs should be altered to eliminate inappropriate and misleading information.  Opp'n 16-19.  The Court finds that the following revisions should be made to the notice.

The first page of the notice should reflect that it is only being sent to Certified Nurse Assistants and not all "current and former employees."  The language following "TO:" should be changed from "employees" to "Certified Nurse Assistants."  This point should be emphasized again in the section entitled "Your Participation in the Suit."  The language should read, "You may be entitled to participate in this lawsuit if (1) you worked for Defendants as a Certified Nurse Assistant at any time since September 2002; and . . . ."

In the "Factual Background" paragraph the final two sentences should read: "Plaintiffs claim that this practice by Defendants violated the Federal Fair Labor Standards Act as well as Maryland law.  Defendants deny these claims and deny any liability for unpaid overtime."[6]

The following sentence should be inserted in between the final two paragraphs of section three: "Your continued right to participate

---

[6] Note that the Court eliminated "requiring overtime pay" from after "Maryland law" and added the last sentence which references the Defendants' assertions.

9

in the suit may depend upon a later decision by the District Court that you and the Plaintiffs are 'similarly situated' in accordance with Federal Law."

In section five, the following sentence should be added to the first bullet point: "Please note that you have the right to obtain your own counsel to represent you in this action."

Finally, Defendants will have fifteen (15) days to furnish Plaintiffs with the names and addresses of potential plaintiffs covered by the notice, Plaintiffs will have 15 days from the time they receive the names to mail the notices, and potential plaintiffs will have sixty (60) days from the date the notice is mailed to respond to the notice.

### B. Motion to Quash Plaintiffs' Subpeona Duces Tecum to ADP, Inc.

On December 23, 2005, Plaintiffs served ADP, Inc. (ADP), Defendants' payroll company, with a subpoena duces tecum requesting the production of "all documents which relate in any way to all wages and other compensation paid by [Augustine] . . . for all employees of Augustine for the time period September 1, 2002 to the present." Mem. Ex. A.  Defendants argue that "[r]equiring production of documents pursuant to Plaintiffs' subpoena would subject ADP to unreasonable and oppressive requests." Id. at 5.  "Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action unless the party claims some personal right or privilege with regard to the documents sought."  9A Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2459 (1995).  Defendants claim that they have a right to their own employee records and that ADP is not an

10

independent third party but rather is an agent of Defendant. The Court agrees and finds that Defendants have standing to challenge the subpoena issued to ADP. In determining whether a subpoena is unreasonable and oppressive, the Court must balance the plaintiffs' reasons for seeking the documents with the harm and embarrassment which would result to the witness if the subpoena were allowed to stand and the documents were produced. In re Zuckert, 28 F.R.D. 29, 31 (D.D.C. 1961). Plaintiffs contend that they sought the employee records from ADP in order to obtain both "information and documentation regarding hours worked by Plaintiffs," and "the names and contact information of all employees of Defendant who might have information regarding Plaintiffs' hours worked." Opp'n 2. Defendants claim that all payroll information for the four Plaintiffs has already been provided (Mem. 1 n.1) and Plaintiffs admit having received a stack of documents in response to discovery requests which they had not yet looked through (Opp'n 2 n.2). In response to the second reason for the documents provided by Plaintiffs, Defendants argue that "Plaintiffs do not need paychecks, time records, time sheets, payroll records, and W-2 forms of all of Augustine's current and former employees to get the names and contact information of individuals that may have information about the named Plaintiffs." Reply 4. The Court agrees with Defendants and finds that Plaintiffs' proffered reasons for requesting the documents carry little weight.

Defendants assert that "enforcement of the subpoena will cause substantial harm to non-party ADP. The subpoena's requests include nearly every document ADP has received or generated concerning Augustine. Such material is sufficiently voluminous such that

11

production will require exorbitant man hours and production costs,

causing an economic harm to non-party ADP." Mem. 5.  The Court finds

that the amount of information requested in the subpoena is

unreasonable; Plaintiffs' proffered reasons for seeking the documents

fail to outweigh the potential time and costs which will be incurred

by ADP in producing the documents and, as such, the motion to quash

will be granted.

### C.  Motion to Dismiss MWP&CL Claim

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure should not be granted unless "it appears

beyond doubt that the plaintiff can prove no set of facts in support

of his claim which would entitle him to relief." Conley v. Gibson,

355 U.S. 41, 45-46 (1957).  In considering such a motion, the court is

required to accept as true all well-pled allegations in the Complaint,

and to construe the facts and reasonable inferences from those facts

in the light most favorable to the plaintiff.  See Ibarra v. United

States, 120 F.3d 472, 473 (4th Cir. 1997).  "To survive a motion to

dismiss, Plaintiff[s] must have alleged facts that show that they are

entitled to relief on their substantive causes of action."  In re

Criimi Mae, Inc. Securities Litigation, 94 F. Supp. 2d 652, 656 (D.

Md. 2000).

Defendants move to dismiss Count III of the Amended Complaint in

arguing that the MWP&CL is inapplicable to a claim for overtime.  The

MWP&CL, §§ 3-501 to 509, provides for the recovery of unpaid wages.

Specifically, under § 3-507.1, "if an employer fails to pay an

employee in accordance with § 3-502 or § 505 of this subtitle . . .

the employee may bring an action against the employer to recover the

12

unpaid wages." Subsection 502 requires employers to pay employees on a regular basis, either once every two weeks or twice each month. Subsection 505 sets the requirements for the payment of wages to terminated employees. The MW&HL, however, specifically provides for the payment of overtime. § 3-415, § 3-420 (employees working more than forty hours in one work week should be paid at an overtime wage of at least 1.5 times their usual hourly wage).

The Court of Appeals of Maryland has specifically stated that the MWP&CL "does not concern the amount of wages payable but rather the duty to pay whatever wages are due on a regular basis and to pay all that is due following termination of the employment." Friolo v. Frankel, 373 Md. 501, 513 (Md. 2003). The Friolo court did not, as Plaintiffs argue, find that a claim for overtime can be brought under both the MWP&CL and the MW&HL. In Friolo, the plaintiff argued that she was due overtime pay for work done as part of consideration for an alleged 5% ownership interest in her employer. Id. at 515. Because at the time of her termination the plaintiff was not paid at all for this work, the court found that she could sue under the MWP&CL for the unpaid wages. Id. Thus, the rate at which the plaintiff's overtime work was compensated was not at issue.

In addition, this Court, in an unpublished decision, specifically found that the "MWP&CL does not contain provisions regulating . . . overtime, such provisions are contained in the [MW&HL]." McLaughlin v. Murphy, Civ. No. CCB-04-767, Memo. at 12-13 (D. Md. July, 20, 2004)(Memorandum denying Motion for Reconsideration dated November 17, 2005, further discusses the reasons why overtime payments do not fall under the scope of MWP&CL).

Plaintiffs' sole contention is that Defendants failed to properly pay Plaintiffs at an overtime rate for work in excess of forty hours a week. Am. Compl. ¶ 6. Plaintiffs do not allege that they did not timely receive their wages or that Defendants failed to pay them upon termination[7] and, as such, they have failed to allege sufficient facts to support a claim under the MWP&CL.

## III. CONCLUSION

For these reasons, the three pending motions will all be granted. A separate order consistent with the reasoning of this Memorandum will follow.

                                                                    /s/

                                          William M. Nickerson
                                          Senior United States District Judge

Dated: January 25, 2006

---

[7] Although Plaintiffs in the Complaint list "unpaid wages" as part of their damages (Compl. 1, 8), the allegations set forth in Count III (Compl. ¶ 19) and Plaintiffs' Opposition to the Motion to Dismiss Count III make clear that overtime wages are the only unpaid wages alleged by Plaintiffs.