### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

VENUS RAWLS <u>et al.</u>          :
                                   :
Individually and on behalf of      :
a others similarly situated        :
                                   :
v.                                 :   Civil No. WMN-05-2602
                                   :
AUGUSTINE HOME HEALTH CARE,        :
INC. <u>et al.</u>                 :

### MEMORANDUM

Before the Court is Defendants' Motion to Decertify Fair Labor Standards Act Collective Action.  Paper No. 53.  Also before the Court is Plaintiffs' Motion for Partial Summary Judgment.  Paper No. 52.  The motions have been fully briefed and are now ripe for review.  Upon review of the pleadings and the applicable case law, the Court has determined that no hearing is necessary, and that both motions will be denied.[1]

### I.  FACTS AND PROCEDURAL HISTORY

Plaintiffs have filed a complaint on behalf of themselves and other similarly situated employees against Augustine Home Health Care, Inc. (Augustine) and its president, chief executive

---

[1]  Although Defendant's Motion to Decertify will be denied, for the reasons stated below, the Court concludes that the Plaintiffs will be subdivided into four classes according to the facilities at which they performed their services.  <u>See</u> <u>Coan v. Nightingale Home Healthcare, Inc.</u>, No. 05-CV-0101-DFH-TAB, 2006 WL 1994772, at *2 (S.D. Ind. July 14, 2006).  In accordance with that decision, Plaintiffs' motion for partial summary judgment will be denied and Plaintiffs may resubmit summary judgment motions specifically tailored to each subdivision of the Plaintiff class.

officer, and owner, David Mainguy.  Augustine is a referral
agency which employs Certified Nursing Assistants (CNAs) who
deliver care primarily to aged or infirm individuals at their
dwelling place.  Augustine contends that the dwelling places of
its individual clients varied, including private homes,
apartments, apartment complexes, senior living facilities, and
assisted living and nursing homes.  Members of the Plaintiff
class claim to have performed their services exclusively at what
they refer to as "continuing care retirement facilities."  Those
facilities include Edenwald, Mercy Ridge, and Pickersgill, all
located in Maryland, and The Forum at Park Lane, located in
Texas.  Plaintiffs allege that, during their employment,
Augustine failed to record their overtime hours properly and
failed to pay them at the overtime rate when they worked in
excess of forty hours in a work week, resulting in violations of
the Federal Fair Labor Standards Act of 1938 (FLSA), as amended,
29 U.S.C. §§ 201 et seq.; the Maryland Wage & Hour Law (MW&HL),
Md. Code Ann., Lab. and Empl. §§ 3-301 et seq.; and the Maryland
Wage Payment & Collection Law (MWP&CL), Md. Code Ann., Lab. and
Empl. §§ 3-501 et seq.

On January 25, 2006, this Court granted, inter alia,
Plaintiffs' motion for court facilitated identification and
notification of similarly situated employees, pursuant to §

216(b) of the FLSA.[2]  Section 216(b) establishes an "opt-in"
scheme which requires potential plaintiffs in an FLSA action to
affirmatively state their intention to become a party to the
action.  29 U.S.C. § 216(b).  In deciding to facilitate notice to
potential class members, this Court found that Plaintiffs had
made a preliminary showing that a group of similarly situated
potential plaintiffs existed.  Mem. & Order dated Jan. 25, 2006
at 5-8 (citing Gjurovich v. Emmanuel's Marketplace, Inc., 282 F.
Supp. 2d 91, 95 (S.D.N.Y. 2003) (noting that a plaintiff's burden
to demonstrate that potential plaintiffs are similarly situated
to him or her is minimal when the determination is merely a
preliminary one)).

        In their instant motion, Defendants contend that facts
revealed in discovery establish that Plaintiffs' disparate
employment settings and job requirements render them sufficiently
dissimilar, requiring decertification of the collective action.
In their motion for partial summary judgment, Plaintiffs argue
that the "companionship services" exception to the overtime
provisions of the FLSA cannot apply to them, entitling them to

---

        [2]  Section 216(b) provides, in part, that "an action . . .
may be maintained against any employer . . . in any Federal or
State court of competent jurisdiction by any one or more
employees for and in behalf of himself or themselves and other
employees similarly situated.  No employee shall be a party
plaintiff to any such action unless he gives his consent in
writing to become such a party and such consent is filed in the
court in which such action is brought."  29 U.S.C. § 216(b).

judgment as a matter of law as to Defendants' FLSA liability.

## II. DISCUSSION

As this Court noted in its preliminary certification memorandum, a two-step inquiry applies in the determination of whether the appropriate circumstances exist to allow an FLSA action to proceed as a collective action.  First, upon a minimal evidentiary showing that a plaintiff can meet the substantive requirements of 29 U.S.C. § 216(b), the plaintiff may proceed with a collective action on a provisional basis.  See Mike v. Safeco Insurance Company, 274 F. Supp. 2d 216, 219 (D. Ct. 2003). Second, following discovery, the court engages in a more stringent inquiry to determine whether the plaintiff class is "similarly situated" in accordance with the requirements of § 216, and renders a final decision regarding the propriety of proceeding as a collective action.  Id.; Marroquin v. Canales, 236 F.R.D. 257, 260 (D. Md. 2006) (noting that the initial, pre-discovery inquiry regarding whether a plaintiff class is similarly situated is "less stringent than the ultimate determination whether the class is properly constituted").  In considering a motion to decertify alleging dissimilarity of the plaintiff class, courts have considered three factors: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations."  Thiessen v. Gen. Elec. Capital Corp., 996 F. Supp. 1071, 1081 (D. Kan. 1998); see also Sharer v.

4

Tandberg, Inc., No. 06-CV-626, 2007 WL 676220, at *2 (E.D. Va.
Feb. 27, 2007).

The first factor of the decertification analysis involves an
assessment of whether Plaintiffs have provided evidence of a
company-wide policy which may violate the FLSA, as well as an
assessment of Plaintiffs' job duties, geographic location,
supervision, and salary.  Thiessen, 996 F. Supp. at 1081-82;
Marroquin, 236 F.R.D. at 260 ("A group of potential plaintiffs
are 'similarly situated' when they together were victims of a
common policy or scheme or plan that violated the law.").  Here,
although Plaintiffs were employed in different geographic
locations, they were all CNAs who performed similar services and
were paid an hourly wage.  Further, undisputed evidence shows
that Augustine engaged in a uniform, company-wide policy of
refusing to pay overtime wages to CNAs who worked in excess of
forty hours per week.  See Letter from Loretta McGowan, Area
Manager, to "All Augustine Home Health Employees" (undated)
(stating that "[d]ue to an exception for all domestic employees .
. ., if you work over 40 hours a week, you will be paid your
regular pay rate"); Dep. of David Mainguy 12:10-16:8.

Augustine's primary argument regarding the dissimilarity of
the plaintiff class focuses on the second factor, the various
defenses available which appear to be individual to each
plaintiff.  The individualized defenses factor assesses whether
potential defenses pertain to the plaintiff class or whether the
potential defenses require proof of individualized facts at

trial.  Thiessen, 996 F. Supp. at 1085.  Augustine contends that
its principle defense at trial would be that Plaintiffs are
exempt from the FLSA's overtime requirement under the
"companionship services" exception.  That exception exempts an
employer from having to pay overtime wages to "any employee
employed in domestic service employment to provide companionship
services for individuals who (because of age or infirmity) are
unable to care for themselves[.]"  29 U.S.C. § 213(a)(15).[3]
Congress created the exception "to enable guardians of the
elderly and disabled to financially afford to have their wards
cared for in their own private homes as opposed to
institutionalizing them."  Welding v. Bios Corp., 353 F.3d 1214,
1217 (10th Cir. 2004) (internal citations omitted).

     For the companionship services exception to apply, the
services rendered must be performed in a "private home."  See 29
C.F.R. § 552.3.[4]  Department of Labor regulations describe a

---

     [3] The term "domestic services" is defined in administrative
regulations to the FLSA as "services of a household nature
performed by an employee in or about a private home (permanent or
temporary) of the person by whom he or she is employed.  The term
includes employees such as cooks, waiters, butlers, valets,
maids, housekeepers, governesses, nurses, janitors, laundresses,
caretakers, handymen, gardeners, footmen, grooms, and chauffeurs
of automobiles for family use.  It also includes babysitters
employed on other than a casual basis.  This listing is
illustrative and not exhaustive."  29 C.F.R. § 552.3 (emphasis
added); see also 29 C.F.R. § 552.109 (extending the companionship
services exemption to those employed by an employer or agency
other than the family);  Long Island Care at Home, Ltd. v. Coke,
--- S.Ct. ---, 2007 WL 1661472, at *11 (June 11, 2007) (upholding
the validity of § 552.109).

     [4] Department of Labor regulations define the term
"companionship services" to include "those services which provide

"private home" as "a fixed place of abode or a temporary dwelling
as in the case of an individual or family traveling on vacation.
A separate and distinct dwelling maintained by an individual or a
family in an apartment house, condominium or hotel may constitute
a private home . . . .  Employees employed in dwelling places
which are primarily rooming or boarding houses are not considered
domestic service employees."  29 C.F.R. § 552.101(a)-(b).  Courts
addressing the companionship services exception have held that
determination of whether a particular employee performs services
in a private home requires a case-by-case, fact-specific inquiry.
See, e.g., Welding, 353 F.3d at 1218 (applying a six factor
inquiry in determining whether companionship services are
provided in a private home and noting that such a determination
is to be made on an evaluation of the living unit of each person
receiving services);[5] Madison v. Res. for Human Dev., Inc., 233

---

fellowship, care, and protection for a person who, because of
advanced age or physical or mental infirmity, cannot care for his
or her own needs. Such services may include household work
related to the care of the aged or infirm person such as meal
preparation, bed making, washing of clothes, and other similar
services. They may also include the performance of general
household work: Provided, however, That such work is incidental,
i.e., does not exceed 20 percent of the total weekly hours
worked."  29 C.F.R. § 552.6 (emphasis in original).

    [5]  The six factors articulated in Welding include whether
the client lived in the living unit as his or her private home
before beginning to receive the services, who owns the living
unit, who manages and maintains the residence, whether the client
would be allowed to live in the unit if the client were not
contracting with the provider for services, the relative
difference in the cost/value of the services provided and the
total cost of maintaining the living unit, and whether the
service provider uses any part of the residence for the
provider's own business purposes.  Welding, 353 F.3d at 1218-20.

F.3d 175, 183 (3d Cir. 2000) (noting that "[w]hat is clear is
that the determination of what constitutes a 'private home' in
the context of the FLSA companionship exemption must be made on a
case-by-case basis, taking into account all aspects of the living
arrangements."); Terwillinger v. Home of Hope, Inc., 21 F. Supp.
2d 1294, 1299 (N.D. Okla. 1998) (setting out a four part fact-
specific inquiry useful in determining whether a dwelling is a
private home).[6]

Here, Augustine contends that evidence uncovered in
discovery clearly demonstrates that substantial differences
existed among the living units in which the Plaintiff CNAs
performed their services.  The units were located in at least
four separate residence facilities in two states, and Augustine
contends that several Plaintiffs served clients living in single
family homes in addition to serving clients at larger residence
facilities.  See Dep. of Linda Webb-Roberts 6:8-7:22 (stating
that while working as a CNA in Texas, she provided services to a
client who lived in a private home with her spouse while other
clients lived alone in nursing facilities).  Augustine argues
that each facility employs a separate set of classifications with
respect to the individual living units offered to its residents.

------

[6]   The Terwillinger Court relied on the following factors:
"(1) [the facility's] source of funding; (2) access to the
facility by the general public; (3) whether it is organized for
profit or is a nonprofit organization; and (4) the size of the
organization."  Terwillinger, 21 F. Supp. 2d at 1299 (citing Linn
v. Developmental Servs. of Tulsa, Inc., 891 F. Supp. 574, 579
(N.D. Okla. 1995)).

<u>See</u> Opp'n to Mot. for Partial Summ. J. 5-7 (noting that the
Edenwald facility offers independent apartments, assisted living
units and nursing units, while the Mercy Ridge facility only
distinguishes between independent apartments and assisted living
units).  Augustine also contends that significant differences
existed among the living units within the living facilities
themselves.   <u>See</u> Dep. of Rhonda Beckett 8:17-10:20 (describing
two-bedroom unit at the Pickersgill facility in which she
assisted a client living with his wife, with a one room unit on
the nursing side of the facility).

     The Court finds that the independent defense factor of the
decertification analysis weighs in favor of dividing the
Plaintiff class according to the individual residence facility at
which the Plaintiffs performed their services.  Plaintiffs
acknowledge that analysis of whether a client's living space
constitutes a private home can be accomplished on a facility-wide
basis.  <u>See</u> Opp'n to Mot. to Decertify 13 (noting that Plaintiffs
"worked in a finite number of facilities where Augustine had
contracts and provided services to residents" and that "there is
no need for any 'individualized inquiry' . . . except perhaps to
the extent the Court considers the Facilities individually.").
The individual units within a particular facility are each
governed by materially similar residency agreements provided by
the facility which define all rules and policies of the
particular facility.  A review of those rules and policies would
likely be sufficient in making a determination as to whether the

individual units constitute "private homes."  The residency
agreements differ from facility to facility, however, making a
determination regarding the applicability of the companionship
exception appropriate only on a facility-wide basis.  <u>Compare</u>
Mot. for Partial Summ. J., Ex. 3 (Edenwald Residence Agreeement);
<u>with</u> Mot. for Partial Summ. J., Ex. 4 (Mercy Ridge Residence
Agreement); Opp'n to Mot. to Decertify, Ex. 6 (The Forum at Park
Lane Residence Agreement).[7]

Finally, under the fairness and procedural considerations
factor, the Court considers the primary objectives of allowance
of a collective action under § 216(b), namely "(1) to lower costs
to the plaintiffs through the pooling of resources; and (2) to
limit the controversy to one proceeding which efficiently
resolves common issues of law and fact that arose from the same
alleged activity."  <u>Moss v. Crawford & Co.</u>, 201 F.R.D. 398, 410
(W.D. Pa. 2000).  The Court also must "determine whether it can
coherently manage the class in a manner that will not prejudice
any party."  <u>Id.</u>  Here, as a practical matter, the Court notes
that each individual Plaintiff would be unlikely to pursue his or
her claim because of the costs involved relative to the damages
sought.  Additionally, Plaintiffs share a common issue as to
whether the facilities in which they worked constitute "private

---

[7]  The Court notes that, despite Plaintiffs' contention that
a determination as to whether the facilities in question
constitute private homes is appropriate at this stage of the
litigation, no residency agreement for Pickersgill facility has
been produced.

homes" for the purposes of the companionship exception.  A
facility-wide determination of the proper characterization of the
clients' residences would allow the litigation to proceed
efficiently.

Thus, at this stage of the present litigation, the
Plaintiffs will be subdivided into four classes according to the
facilities at which they performed their services: Edenwald,
Mercy Ridge, Pickersgill, and the Forum at Park Lane.  See Coan
v. Nightingale Home Healthcare, Inc., No. 05-CV-0101-DFH-TAB,
2006 WL 1994772, at *2 (S.D. Ind. July 14, 2006) (noting that the
district court may order separate trials for sub-classes of
plaintiffs participating in opt-in litigation under the FLSA);
accord Realite v. Ark Restaurants Corp., 7 F. Supp. 2d 303, 308
(S.D.N.Y. 1998).  Accordingly, Plaintiffs' instant motion for
partial summary judgment will be denied and, should they choose
to do so, Plaintiffs may resubmit summary judgment motions
specifically tailored to each subdivision of the Plaintiff class.

### III.  CONCLUSION

For these reasons, the pending motions will be denied.  A
separate order consistent with the reasoning of this Memorandum
will follow.

_____/s/_____

William M. Nickerson
Senior United States District Judge

Dated: July 5, 2007

11